IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

GC, a minor, by next friend and mother, )
Jerlene Johnson, and JERLENE JOHNSON, )
                                        )
        Plaintiffs,                     )
                                        )
v.                                      )    Case No. 2:10-cv-0037
                                        )    Judge Trauger
WYNDHAM HOTELS AND RESORTS, LLC )
and WYNDHAM VACATION RESORTS,           )
INC., d/b/a Wyndham Resort at Fairfield )
Glade,                                  )
                                        )
        Defendants.                     )

## MEMORANDUM AND ORDER

Pending before the court is the defendants' Motion for Summary Judgment (Docket No.

20), to which the plaintiffs have filed a response (Docket No. 23), and in support of which the

defendants have filed a reply (Docket No. 28). For the reasons discussed below, the defendants'

motion will be granted in part and denied in part.

## FACTS

This case arises out of an incident in which a toddler ingested pesticide while on vacation

with her family. On July 31, 2009, the plaintiffs, Jerlene Johnson and her daughter G.C., were

traveling with Johnson's fiance, Gary McDavid, and Johnson's older daughter.[1] At the time,

G.C. was two years old. The family had rented a condominium at the Wyndham Resort at

---

[1] Unless otherwise noted, the facts are drawn from the parties' statements of undisputed
facts and responses thereto (Docket Nos. 21, 24, and 29). The court draws all reasonable
inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574, 587 (1986); *Brown v. United States*, 583 F.3d 916, 919 (6th Cir. 2009)

Fairfield Glade, Tennessee (the "Resort"), which is operated by the defendants, Wyndham

Hotels and Resorts, LLC and Wyndham Vacation Resorts, Inc.

Upon arriving at the Resort that evening, Johnson and McDavid began unloading their

car. Soon after, according to the plaintiffs' undisputed account, Johnson's older daughter ran out

of one of the bedrooms and exclaimed that G.C. had "drank ant poison." (Docket No. 23, Ex. 2

at 34.) The daughter directed McDavid to a nearly empty tube of pesticide located on a

nightstand; another pesticide tube, which was full, was located on a nightstand on the other side

of the bed.[2] McDavid called the Resort's front desk, which called for an ambulance within

several minutes.

While waiting for the ambulance, Johnson sat with G.C. At her deposition, Johnson

testified that G.C. appeared scared and complained of her stomach hurting. Johnson further

testified that it appeared that G.C., who has a history of asthma, was having difficulty breathing.

When the paramedics arrived, Johnson handed the pesticide tubes to them. After determining

that G.C. should be taken to the emergency room, the paramedics started an I.V. and placed G.C.

on a heart monitor. Johnson testified that, en route to the hospital, a rash developed over G.C.'s

body.

At the hospital, G.C. was observed for several hours, after which she was discharged.

With the exception of Johnson's testimony that G.C.'s asthma has been slightly worse since the

incident, there is no evidence that G.C. suffered any long-term effects from the pesticide.

The plaintiffs did not retrieve the pesticide tubes from the paramedics. The defendants'

---

[2] The parties do not indicate the size of the pesticide tubes.

evidence suggests, and the plaintiffs do not dispute, that the pesticide at issue was Terro Ant

Killer II, which contains the ingredient sodium borate.[3]  The Material Safety Data Sheet for

Terro Ant Killer II recommends that, if the pesticide is ingested, the person should "[d]ilute with

1-2 glasses of water" and should "contact physician or poison control center."  (Docket No. 20,

Ex. 4 at 6.)  The sheet does not list toxicology information for sodium borate or any acute health

effects from the ingestion of the chemical, but it does affirmatively state that no chronic health

effects are expected.  (*Id.*)

The defendants have submitted the affidavit of toxicology expert Dr. Donna Seger, who

is the Medical Director of the Tennessee Poison Center and an Associate Professor of Medicine

and Emergency Medicine at Vanderbilt University Medical Center.  In her affidavit, Seger

opines that sodium borate "would be nontoxic in the amounts that a toddler could ingest."

(Docket No. 20, Ex. 3 ¶ 8.)  She states that G.C.'s follow-up appointment with a pediatric

pulmonologist, which occurred 11 days after the incident, showed that G.C. was breathing

normally, that her lungs were clear, and that she had not "accidental[ly] aspirated" the pesticide.

(*Id.* ¶ 9.)  Seger further opines that "there is no indication that GC even ingested a pesticide."

(*Id.* ¶ 10.)  She concludes that "there is no medical evidence that GC's preexisting respiratory

problems were in any way exacerbated by the alleged ingestion of sodium borate" and that

"[s]odium borate has played no role in this child's clinical course."  (*Id.*)  The plaintiffs have

---

[3] The defendants have submitted the affidavit of employee Gary Karge, however, stating that Karge removed all containers of Terro Ant Killer II before the plaintiffs arrived at the condominium.  (Docket No. 20, Ex. 4 ¶ 4.)

offered no countervailing expert testimony.[4]

The plaintiffs initially filed suit in Tennessee state court, and the defendants removed to this court on diversity grounds. The plaintiffs' Complaint asserts claims for negligence and negligent infliction of emotional distress. The defendants have filed a Motion for Summary Judgment, pursuant to Federal Rule of Civil Procedure 56, seeking dismissal of both claims.

## ANALYSIS

### I.    Summary Judgment Standard

Rule 56 requires the court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If a moving defendant shows that there is no genuine issue of material fact as to at least one essential element of the plaintiff's claim, the burden shifts to the plaintiff to provide evidence beyond the pleadings "set[ting] forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "In evaluating the evidence, the court must draw all inferences in the light most favorable to the [plaintiff]." *Moldowan*, 578 F.3d at 374.

At this stage, "'the judge's function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). But "the mere existence of a

---

[4] Because the plaintiffs did not retain a medical expert before the expert disclosure deadline, the court previously granted the defendants' unopposed motion to bar any expert testimony offered by the plaintiffs. (Docket No. 27.)

scintilla of evidence in support of the plaintiff's position will be insufficient," and the plaintiff's

proof must be more than "merely colorable." *Anderson*, 477 U.S. at 249, 252. An issue of fact

is "genuine" only if a reasonable jury could find for the plaintiff. *Moldowan*, 578 F.3d at 374

(citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## II.    Negligence Claim

The defendants primarily argue that the plaintiffs cannot show that G.C.'s ingestion of

pesticide caused any injury, because the plaintiffs have not offered expert testimony in support

of their claims. (Docket No. 20, Ex. 1 at 8-12.)

To establish a claim of negligence, which is "basically defined as the failure to exercise

reasonable care," a plaintiff must prove the following elements: "(1) a duty of care owed by

defendant to plaintiff; (2) conduct below the applicable standard of care that amounts to a breach

of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, cause." *Giggers*

*v. Memphis Hous. Auth.*, 277 S.W.3d 359, 364 (Tenn. 2009) (quotation marks omitted). Here,

the defendants do not dispute that a hotel has a duty to ensure that its rooms are reasonably safe

for occupants and that leaving tubes of pesticide in a room may violate that duty.[5] Instead, they

challenge the plaintiffs' ability to show causation and injury.

The defendants argue that their own expert's testimony conclusively shows that G.C. did

_____

[5] In their Complaint, the plaintiffs reference the Federal Insecticide, Fungicide and
Rodentcide Act ("FIFRA"), 7 U.S.C. § 136 *et seq.*, and allege that the defendants' violation of
that act constitutes a violation of the defendants' duty to the plaintiffs. (*See* Docket No. 1, Ex. 1
¶¶ 19-21, 23.) The defendants point out, however, that FIFRA does not create any private right
of action. (Docket No. 20, Ex. 1 at 15-18.) In response, the plaintiffs concede that they have no
FIFRA claim and that they cannot maintain a claim for negligence *per se* based on FIFRA.
(Docket No. 23, Ex. 1 at 5.)

not suffer any injury from ingesting the pesticide. Indeed, Seger opines that sodium borate is

"nontoxic in the amounts that a toddler could ingest" and that G.C. suffered no ill effects.

(Docket No. 20, Ex. 3 ¶¶ 8, 10.) But Seger's affidavit omits several key facts; for example, she

does not explain the potential effects of ingesting sodium borate, the amount of sodium borate

necessary to cause those effects, or the amount of pesticide that she believes a toddler can ingest.

She also completely fails to address Johnson's testimony that, soon after consuming the

pesticide, G.C. experienced breathing difficulties, stomach pain, and a rash.[6] These

shortcomings limit the value of Seger's testimony with regard to the symptoms that G.C.

experienced after ingesting the pesticide.

Furthermore, the plaintiff is not required to submit expert testimony to show that the

symptoms occurring immediately after G.C.'s ingestion were caused by the pesticide. In *Gass v.*

*Marriott Hotel Services, Inc.*, 558 F.3d 419 (6th Cir. 2009), the plaintiffs entered their hotel

room while it was being fumigated with pesticides. *Id.* at 422-23. Within 15 minutes of this

exposure, the plaintiffs complained of numbness, swelling of their hands and face, itchiness,

---

[6] Seger only states that, during G.C.'s stay at the emergency room, "it was noted that her lungs were clear, meaning that there was not wheezing or signs of any type of respiratory distress." (Docket No. 20, Ex. 3 ¶ 7.) Importantly, Seger's affidavit does not negate the possibility that G.C. felt symptoms immediately after ingesting the pesticide but that those symptoms cleared up while she was in the hospital.

In addition, the court takes judicial notice of the fact that the National Institute for Occupational Safety and Health's Pocket Guide to Chemical Hazards, published by the Centers for Disease Control and Prevention, states that ingestion or inhalation of sodium borate decahydrate, the chemical contained in Terro Ant Killer II, may cause "irritation [of the] eyes, skin, [or] upper respiratory system," "dermatitis," "cough," or "dyspnea (breathing difficulty)." CDC - NIOSH Pocket Guide to Chemical Hazards, http://www.cdc.gov/niosh/npg/npgd0058.html, *accessed on* May 18, 2011. These symptoms appear to be consistent with G.C.'s symptoms of breathing difficulty and a rash.

stomach aches, dizziness, and shortness of breath, and they were taken to an urgent care center.

*Id.* at 423. The defendants introduced expert testimony indicating that the chemical to which the

plaintiffs were probably exposed could not have caused the plaintiffs' illness, and they argued

that, without countervailing expert testimony, the plaintiffs could not establish causation. *Id.* at

431.

The Sixth Circuit rejected this argument.[7] The court found it "significant that the

Plaintiffs began experiencing symptoms within fifteen minutes of their alleged exposure," *id.* at

432, and it held that "[i]t does not take an expert to conclude that, under these circumstances,

Defendants more likely than not are responsible for Plaintiffs' injuries," *id.* at 433. Similarly,

here, even in the absence of expert testimony, a reasonable juror could conclude that G.C.'s

ingestion of pesticide caused her immediate symptoms of stomach pain, breathing difficulty, and

a rash. In fact, it is difficult to imagine what, if not the pesticide, caused those symptoms.

Accordingly, the plaintiff has sufficiently shown causation with regard to the symptoms that

G.C. experienced on the day of the incident.[8] Moreover, these physical symptoms, as well as the

money that Johnson expended on G.C.'s medical care, constitute injury. The plaintiffs have

therefore established a *prima facie* case of negligence.

The defendants further argue that the plaintiffs have not sufficiently shown that their

---

[7] In *Gass*, the Sixth Circuit applied Michigan law, but the defendants do not argue that Tennessee law differs in any material respect.

[8] A juror could *not* reasonably conclude, however, that the ingestion of the pesticide had any long-term effects on G.C. Johnson's testimony that G.C.'s asthma became slightly worse in the years following the incident is simply insufficient to imply causation. The plaintiffs appear to concede this point, because their brief focuses exclusively on the contention that they have shown causation regarding the symptoms that G.C. experienced on the day of the incident.

medical expenses were reasonable. (Docket No. 28 at 4.) The defendants cite *Borner v. Autry*, 284 S.W.3d 216 (Tenn. 2009), which stated that "[a]n injured plaintiff bears the burden of proving that medical expenses the plaintiff is seeking to recover are necessary and reasonable" and that, "[i]n all but the most obvious and routine cases, plaintiffs must present competent expert testimony to meet this burden of proof." *Id.* at 218.

There are several problems with this argument. First, the defendants raised the argument for the first time in their reply brief. Such arguments "are generally not considered because such a practice deprives the non-moving party of its opportunity to address the new arguments." *Cooper v. Shelby County*, No. 07-2283, 2010 U.S. Dist. LEXIS 81198, at *11 (W.D. Tenn. Aug. 10, 2010); *see also id.* at *11 n.14 (collecting Sixth Circuit and district court cases). Second, the defendants do not indicate whether the plaintiffs have produced copies of their medical bills. If a plaintiff produces "an itemization of or copies of the medical, hospital or doctor bills" at least 90 days before trial, there is a rebuttable presumption that the expenses were reasonable. Tenn. Code Ann. § 24-5-113(b)(1). Third, it is possible that, to the extent that the plaintiffs seek to recover expenses for G.C.'s trip to the emergency room immediately after her ingestion of the pesticide and for one followup doctor's visit, it is sufficiently "obvious" that the expenses were necessary. In fact, the Material Safety Data Sheet for Terro Ant Killer II suggests that a person who ingests the product should contact a physician, and the paramedics who responded to the call recommended that G.C. visit the emergency room.

Accordingly, the court will not dismiss the plaintiffs' negligence claim.

**III.     Negligent Infliction of Emotional Distress Claim**

Finally, the defendants argue that the plaintiffs cannot establish their claim for negligent infliction of emotional distress. The plaintiffs concede this point (Docket No. 23, Ex. 1 at 5), so that claim will be dismissed.

## CONCLUSION

For the reasons stated above, the defendants' Motion for Summary Judgment (Docket No. 20) is **GRANTED IN PART** and **DENIED IN PART**. The plaintiffs' claim for negligent infliction of emotional distress is hereby **DISMISSED**, but their claim for negligence, as limited herein, will remain for trial.

It is so Ordered.

Entered this 19th day of May 2011.

                                            _____

                                            ALETA A. TRAUGER
                                            United States District Judge